UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**KAREN WAESCHLE, individually
and on behalf of others
similarly situated,**

        Plaintiffs(s),        CASE NUMBER: 08-10393
                              HONORABLE VICTORIA A. ROBERTS

v.

**OAKLAND COUNTY MEDICAL EXAMINER,
LJUBISA J. DRAGOVIC, M.D., individually
and in his official capacity as Medical Examiner
of Oakland County, Michigan, and on behalf
of others similarly situated,**

        Defendant(s).
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Before the Court is Defendants' "Motion to Strike Plaintiff's Sur-Reply Brief." (Doc. #58). Defendants ask the Court to strike Plaintiff Karen Waeschle's ("Waeschle") sur-reply because it is not authorized under the local rules or the Court's June 3, 2008 scheduling order. Waeschle agrees that her sur-reply is not authorized, but asks the Court to grant leave to file the sur-reply. Waeschle's request is denied; Defendants' motion is **GRANTED**.

Also before the Court is Defendants' "Motion for Summary Judgment, Certification of a Question of Michigan Law and Dismissal." (Doc. #49). Defendants ask the Court to dismiss Waeschle's Complaint because: (1) Waeschle does not have

1

a constitutionally protected property interest in a deceased relative's body parts; and (2) they are either entitled to governmental immunity on her state law claims, or, her state law claims fail to state a claim upon which relief can be granted.

If the Court finds Waeschle has a constitutionally protected property interest in a deceased relative's body parts, Defendants ask the Court to find they are entitled to qualified immunity because that interest is not clearly established.

In the alternative, Defendants ask the Court to certify this question to the Michigan Supreme Court: Does Waeschle have a constitutionally protected property interest in a deceased relative's body parts that are removed during a lawful autopsy to determine the cause of death?

Oral argument was heard on September 16, 2008.

For the following reasons, Defendants' motion is **GRANTED IN PART AND DENIED IN PART**. The Court finds Waeschle has a federally protected constitutional right to her mother's body parts, grounded in the Fourteenth Amendment Due Process Clause. That right is clearly established. Because this is a federal cause of action, it is not necessary to certify a question to the Michigan Supreme Court.

## II.  BACKGROUND

Waeschle's mother, Katherine Weins ("Weins"), lived in the Bortz Nursing Home. On August 28, 2006, the nursing home staff discovered Weins lying on the floor in a pool of blood. Weins was transported to the Huron Valley Hospital; the hospital diagnosed her with a closed head injury and scalp laceration.

Weins died on September 7, 2006. Because there was a suspicion that the

nursing home staff neglected or abused Weins: (1) the West Bloomfield Township Police Department initiated a criminal investigation; and (2) Dr. Ruben Ortiz-Reyes ("Dr. Ortiz-Reyes"), an Oakland County Deputy Medical Examiner, conducted an autopsy on September 8, 2006 pursuant to Michigan law. *See* MCLA §52.202(1) ("A county medical examiner or deputy county medical examiner shall investigate the cause and manner of death of an individual under each of the following circumstances: (a) The individual dies by violence[;] (b) The individual's death is unexpected").

During Weins's autopsy, Dr. Ortiz-Reyes removed her brain and placed it in formaldehyde for further studies. According to Dr. Ljubisa J. Dragovic, the Oakland County Medical Examiner, the standard procedure is to retain a deceased person's brain for further studies when the individual suffered a closed head injury and a criminal investigation is pending. That procedure is authorized by Michigan law. *See* MCLA §52.205(5) ("the medical examiner may retain, as long as may be necessary, any portion of the body believed by the medical examiner to be necessary for the detection of any crime"). After a forensic examination, Defendants say Weins's brain was disposed of as medical waste.

Waeschle discovered Weins was cremated without her brain after she read the autopsy report. Her Complaint against Defendants alleges: (1) Defendants violated her Fourteenth Amendment due process rights by depriving her of Weins's brain without prior notice; (2) negligent infliction of emotional distress; and (3) intentional infliction of emotional distress. Waeschle does not contest the medical examiner's authority to remove the brain for forensic examination.

**III. STANDARD OF REVIEW**

3

Waeschle's Fourteenth Amendment due process claim is reviewed under the summary judgment standard. Her state law claims are reviewed under Fed. R. Civ. P. 12(b)(6).

Fed. R. Civ. P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In reviewing a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986).

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must, by affidavit or otherwise as provided by Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate. *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir. 1989).

When reviewing a motion under Fed. R. Civ. P. 12(b)(6), the trial court "must

4

construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)); *see also Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Because a Fed. R. Civ. P. 12(b)(6) motion rests upon the pleadings rather than the evidence, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence or evaluate the credibility of witnesses." *Miller*, 50 F.3d at 377 (citing *Cameron v. Seitz*, 38 F.3d 264, 270 (6th Cir. 1994)). However, while this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436 (6th Cir. 1988)). Rather, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory. *DeLorean*, 991 F.2d at 1240 (citations omitted).

**IV.   APPLICABLE LAW AND ANALYSIS**

    **A.   The Fourteenth Amendment Due Process Protections**

To succeed on her 42 U.S.C. §1983 claim, grounded in the Fourteenth Amendment Due Process Clause, Waeschle must prove: (1) the deprivation of a property right "secured by the Constitution and the laws" of the United States; and (2) Defendants deprived her of that right acting under color of state law. *See Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978). The parties do not dispute that Dr. Ortiz-Reyes was acting under color of state law when he removed/retained Weins's brain for further studies. Indeed, MCLA §52.205(5) permits the medical examiner to retain any

5

portion of a deceased person's body necessary for the detection of crime.

The issue in this case is whether Waeschle has a property interest in Weins's brain – protected by the United States Constitution – such that she was entitled to notice that Weins's brain was not included with her other remains.

Property interests are created and their dimensions are defined by state law. *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). This Court can look to the Michigan Supreme Court or other indicia of state law to determine if there is a declared property interest in a deceased relative's remains/body parts. *See Brotherton v. Cleveland*, 923 F.2d 477, 480 (6th Cir. 1991) (looking to "other indicia of state law," including state appellate court decisions to determine whether plaintiff has a protected property interest in her deceased husband's corneas); *Kveragas v. Scottish Inns, Inc.*, 733 F.2d 409, 412 (6th Cir. 1984).

Michigan law regarding general property rights are anchored in the right to possess. For example, *see* M Civ JI 19.02 – Possessor of Land – Definition. This standard instruction defines a "possessor" as, *inter alia*, a person who has the right to immediate occupation of land. The Court in *Brotherton* says Ohio avoided calling the surviving spouse's interest "property," but recognized that Ohio does grant the right to *possess* body parts of deceased relatives. *Brotherton*, 923 F.2d at 480-81 (citing *Everman v. Davis*, 54 Ohio App.3d 119, 122 (1989)).

While the legal definition of property is often tied to a physical object, the law of property has become more abstract, and a property right is often conceptualized as a "bundle of rights." *See Brotherton*, 923 F.2d at 481 (citing *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 435 (1982)). These rights include the right to

6

possess, to use, to exclude, to profit, and to dispose.  *Brotherton*, 923 F.2d at 481.

Importantly, the United States Supreme Court held that "'property' interests subject to procedural due process protection are not limited by a few rigid, technical forms.  Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or understandings.'"  *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (quoting *Roth*, 408 U.S. at 577).

If a determination is made that the next-of-kin have a state protected property interest in a deceased relative's body parts/remains post-autopsy, the issue then is whether that interest rises to the level of a "legitimate claim of entitlement," because the Due Process Clause only protects those interests which rise to such a level.  *Roth*, 408 U.S. at 577.  Whether an interest rises to the level of a "legitimate claim of entitlement" protected by the Due Process Clause, is determined by federal law.  *Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 9 (1978) (citing *Roth*, 408 U.S. at 577; *Perry*, 408 U.S. at 602).  "This determination does not rest on the label attached to a right granted by the state but rather on the substance of that right."  *Brotherton*, 923 F.2d at 482 (citing *Mathews v. Eldridge*, 424 U.S. 319, 332; *Goldberg v. Kelly*, 397 U.S. 254 (1970)).

Waeschle relies on *Whaley v. County of Tuscola*, 58 F.3d 1111 (6th Cir. 1995) and *Dampier v. Grace Hosp. Corp.*, 233 Mich.App. 714 (1999).  However, the Michigan Supreme Court, as far back as 1899, addressed the interest that next-of-kin have in a deceased relative's body parts.

*Doxtator v. Chicago & W. Michigan Ry. Co.*, 120 Mich. 596 (1899) stated the defendants were entitled to a directed verdict, not because the widow had no

7

possessory interest in her deceased husband's remains, but because she sued the wrong party. In *Doxtator*, Thomas A. Doxtator's ("Mr. Doxtator") legs were crushed while he worked at the Chicago & West Michigan Railway Company ("Railway Company"). *Doxtator*, 120 Mich. at 597-98. Mr. Doxtator's co-workers called an ambulance to take him to the hospital. *Id.* at 598. The doctors knew, upon Mr. Doxtator's arrival, that his injuries were fatal. Nevertheless, Dr. Wooster, a Railway Company employee, amputated Mr. Doxtator's legs. *Id.* at 598-99. After the operation, the orderly of the hospital burned the fragments. *Id.* at 599. Mr. Doxtator's wife sued the Railway Company, which turned the body over to the hospital. The Michigan Supreme Court held that:

> the one whose duty it is to care for the body of the deceased is entitled to *possession* of the body, as it is when death comes, and that it is an actionable wrong for another to interfere with that right by withholding the body or mutilating it in any way.

*Id.* at 597 (citations omitted) (emphasis added). In this holding, the court found Dr. Wooster had a duty to operate on Mr. Doxtator, but not the duty to ensure Mr. Doxtator's remains were delivered to his widow when death ensued. *Id.* at 600-01.

In *Keyes v. Konkel*, 119 Mich. 550 (1899), after the undertaker fitted the body for burial, he refused to release it until payment. *Keyes*, 119 Mich. at 550. The Michigan Supreme Court held that next-of-kin have a quasi-property right to control/bury a dead body. *Id.* at 551 (citations omitted). The Court held that the cause of action was "not for the damage to the corpse as property, but damage to the next of kin by infringement of his right to have the body delivered to him for burial without mutilation." *Id.*

*Deeg v. City of Detroit*, 345 Mich. 371 (1956) relies on *Doxtator* to hold plaintiff

8

had a cause of action when she did not give permission for an autopsy, and organs were removed unnecessarily. *Deeg*, 345 Mich. at 376-77 (rev'd on other grounds).

All of the above cases are long-standing Michigan Supreme Court cases which acknowledge the possessory interest that next-of-kin have in a deceased relative's remains, and that they have a right to the return of body parts.

*Whaley* recognized that Michigan law is substantively identical to Ohio law, but "[Michigan] courts have explicitly held what Ohio courts have not: that the next of kin have a right to possess the body for burial and prevent mutilation." *Whaley*, 58 F.3d at 1114-15.

*Dampier* is simply the latest pronouncement of Michigan courts on the subject; it recognized that plaintiff stated a federal constitutional claim for violation of a property right, *See Dampier*, 233 Mich.App. at 735, and based its holding on *Whaley*, which relied on *Doxtator*, *Keyes* and *Deeg*. The *Dampier* court pointed out an important part of the *Whaley* holding – albeit in a footnote – when it stated that:

> the Sixth Circuit Court of Appeals did not believe that the fine distinctions made by the Ohio and Michigan courts regarding the labels to be assigned this right were of any particular significance to its decision and stated that the rights of the next of kin in the body were at the "heart and soul of the common law understanding of 'property.'"

*Id.* at 735 n.3 (quoting *Whaley*, 58 F.3d at 1115).

Further, Michigan statutes address the possessory interest that next-of-kin have in a deceased relative's remains/body parts. *See e.g.*, MCLA §700.3206(1) ("Subject to [MCLA §52.205(5)], a [next-of-kin] is presumed to have the right and power to make decisions about funeral arrangements and the handling, disposition, or disinterment of a decedent's body, including, but not limited to, decisions about cremation, and the right

9

to possess cremated remains of the decedent"); MCLA §52.205(5) ("the medical examiner may retain, *as long as may be necessary*, any portion of the body believed by the medical examiner to be necessary for the detection of any crime") (emphasis added). The power of the medical examiner to retain a deceased person's remains/body parts ends once the cause of death is determined. Upon completion of the autopsy, the next-of-kin are entitled to possession of their deceased relative's remains "as [they are] when death comes" (i.e., the complete body). See *Doxtator*, 120 Mich. at 597.

Based on Michigan Supreme Court precedent, as interpreted by the Sixth Circuit Court of Appeals, this Court holds that Waeschle states a 42 U.S.C. §1983 cause of action under the Fourteenth Amendment Due Process Clause.

The Court is not persuaded by *Albrecht v. Treon*, No. 2008-Ohio-2617 (S.D. Ohio June 5, 2008), relied on by Defendants. This Court's analysis – grounded in whether Waeschle has a property interest in her mother's remains – does not depend on whether Weins's brain was removed pursuant to a statutorily mandated autopsy or for a charitable purpose. Also, *Albrecht* was decided under Ohio law, and the Ohio General Assembly had enacted a statute which classified autopsy specimens as "medical waste" and authorized the coroner to dispose of it as such.

Defendants characterize the holding in *Keyes* as mere dicta which cannot be relied on by this Court as a definitive statement by the Michigan Supreme Court regarding the rights of family members to the body parts of deceased relatives.

The Court disagrees. In *Keyes*, plaintiff brought a replevin action, which was the correct cause of action to recover personal goods or chattel unlawfully taken. The Court

necessarily had to determine that the corpse did not fall into the category of personal goods or chattel; rather, the court found that defendant infringed on the right of the next-of-kin to have the body delivered to him for burial without mutilation. *See Keyes*, 119 Mich. at 550-51.

Similarly, the holding in *Deeg* was not dicta. Two questions were presented in that appeal: Did the widow have a cause of action for mutilation when no one authorized an autopsy and organs were removed; and, if so, did her cause of action survive her own death? Critical to the court's holding on the first question was that there was a person entitled to the possession, control and burial of the body; otherwise, there could not have been a finding that there was a duty to not unlawfully and intentionally mutilate it. *See Deeg*, 345 Mich. at 375. This critical holding also was the underpinning of the court's second holding: that because it was a personal right to possession, the right did not survive the widow's own death. *See id.* at 379.

Finally, the Court believes the language in *Doxtator* was not dicta. The *Doxtator* court could not have reached the issue of whether Dr. Wooster had the duty to return Mr. Doxtator's body to his widow when death ensued, if Michigan did not recognize the next-of-kin's right to a deceased relative's remains/body parts.

The Sixth Circuit Court of Appeals confirms that the Michigan Supreme Court's holding regarding a next-of-kin's interest in a deceased relative's remains/body parts is not dicta. *See Whaley*, 58 F.3d at 115 ("The Supreme Court of Michigan has repeatedly held that the next of kin '[are] entitled to possession of the body as it is when death comes, and that it is an actionable wrong for another to interfere with that right by withholding the body or mutilating it any way'") (citing *Doxtator*, 120 Mich. at 597;

11

*Keyes*, 119 Mich. at 551; *Deeg*, 345 Mich. at 376).

Since this Court is not limited in its review to state supreme court decisions, but can look to "other indicia of state law," such as appellate decisions, *See Brotherton*, 923 F.2d at 480, the Court is further persuaded that Michigan recognizes that next-of-kin have some property interest in the remains of deceased relatives. Waeschle alleges the existence of "rules and understandings" which justify her "legitimate claim of entitlement" to her mother's body parts. *See Perry*, 408 U.S. at 601-03 ("A person's interest . . . is a 'property' interest for due process purposes if there are . . . rules or mutually explicit understandings that support his claim . . . and that he may invoke at a hearing").

Although the facts in prior precedent are not directly on point, there is a close correspondence between prior precedent and Waeschle's case. The Court finds this nexus is sufficient to support Waeschle's Fourteenth Amendment due process claim.

### B. No Reason to Certify a Question to the Michigan Supreme Court

"When a federal court . . . considers a question that Michigan law may resolve and that is not controlled by Michigan Supreme Court precedent, the court may . . . certify the question to the Michigan Supreme Court." MCR 7.305(B)(1).

This Court finds no question that Michigan law may resolve is presented here. The property right is sufficiently established, and whether that right rises to the level of a "legitimate claim of entitlement," protected by the Due Process Clause of the Fourteenth Amendment, is a matter of federal law. *See Memphis Light, Gas & Water Div.*, 436 U.S. at 9.

Further, the Court declines to certify a question to the Michigan Supreme Court

simply because the facts of Waeschle's case are similar to *Albrecht*, where the court did certify a question to the Ohio Supreme Court. When *Albrecht* was decided, the Ohio Supreme Court had not considered whether next-of-kin have a property interest in a deceased relative's remains/body parts. Importantly, the Michigan Supreme Court decided that issue in 1899.

There is a genuine issue of material fact regarding whether Defendants violated Waeschle's due process right to notice that Weins's remains did not contain her brain.

## V. CLEARLY ESTABLISHED CONSTITUTIONAL RIGHT

In addition to Waeschle's burden to prove Defendants violated a constitutional right, Waeschle must prove the right is "clearly established." *See Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). The Court must decide: (1) did Waeschle identify a clearly established constitutional right that was violated?; and (2) whether Defendants reasonably should have known their conduct was in violation of that right. *Collins v. Crabbe*, 1999 WL 55279 at *2 (6th Cir. Jan. 12, 1999) (citing *Johnson v. Estate of Laccheo*, 935 F.2d 109, 111 (6th Cir. 1991)); *see also Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996):

> For a right to be "clearly established," the contours of the right must be sufficiently clear that a reasonable official would understand that his or her conduct violates that right. The unlawfulness of the official or employee's conduct must be *apparent* in light of pre-existing law. A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

(citations omitted) (emphasis added).

If Waeschle's constitutional right is not a clearly established right, Defendants are entitled to qualified immunity. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)

(citations omitted). And, summary judgment on Waeschle's due process claim is appropriate. *See Poe v. Haydon*, 853 F.2d 418, 425 (6th Cir. 1988) (citing *Green v. Carlson*, 826 F.2d 647, 652 (7th Cir. 1987)).

Citing *Blake v. Wright*, 179 F.3d 1003 (6th Cir. 1999), Defendants argue that Waeschle's constitutional right was not clearly established because they acted under the authority of a Michigan statute. *See Blake*, 179 F.3d at 1010-13 (holding defendant is entitled to qualified immunity for a statutory violation if the law is not clearly established).

The Court finds that Waeschle's constitutional right to notice that she did not receive Weins's brain is clearly established for two reasons. First, the Michigan Court of Appeals authoritatively decided that the next-of-kin have a cognizable claim under the Fourteenth Amendment for violation of the right to a deceased relative's body, *See Dampier*, 233 Mich.App. at 737, therefore, "[t]he unlawfulness of [Defendants'] conduct [was] apparent in light of pre-existing law." *See Durham*, 97 F.3d at 688.

Second, Michigan law authorizes autopsies and the removal/retention of organs "as long as may be necessary" for forensic examination when a criminal investigation is pending. *See* MCLA §§ 52.202(1); 52.205(5). This language presumes that the retention is for a limited period of time. Defendants do not cite a Michigan statute that gives them the authority to release a deceased person's body and not inform the next-of-kin that an organ is missing. Nor do they cite a statute that allows retention beyond the time necessary for forensic examination.

Indeed, Michigan law favors the release of a deceased person's complete body to the next-of-kin. *See* MCLA §52.205(4) ("The medical examiner shall . . . notify

14

immediately as compassionately as possible the next of kin of the death and the body");
MCLA §52.205(5) ("The county medical examiner shall, after any required examination
or autopsy, promptly deliver or return the body to relatives or representatives of the
deceased"); *see also Whaley*, 58 F.3d at 1115 (Michigan law provides the next-of-kin
with a "right to possess the body for burial and prevent its mutilation").

Based on Michigan's clearly established law that the next-of-kin have an interest
in their deceased relative's remains/body parts, Defendants reasonably should have
known they were violating Waeschle's right when Weins's brain was removed/retained
without notice to Waeschle.

## VI. STATE LAW CLAIMS

### A. Negligent Infliction of Emotional Distress

Waeschle can only recover for negligent infliction of emotional distress if she
"witnesse[d] negligent injury to a third person and suffer[ed] mental disturbance as a
result." *See Duran v. Detroit News, Inc.*, 200 Mich.App. 622, 629 (1993).

Waeschle's negligent infliction of emotional distress claim fails to state a claim
upon which relief can be granted and is dismissed for two reasons. First, Waeschle
does not allege that she witnessed a negligent injury to Weins. The stated cause of
action is removal of body parts and failure to give notice of the removal, and retention of
body parts.

Second, negligent infliction of emotional distress is not the appropriate cause of
action for the failure to notify family members that their deceased relative's body does
not have all of its organs.

### B. Intentional Infliction of Emotional Distress

When the Court construes Waeschle's Complaint liberally in her favor and accepts all factual allegations as true, *See Miller*, 50 F.3d at 377, her intentional infliction of emotional distress claim fails as a matter of law. The Complaint contains the "bare assertion of legal conclusions" insufficient to survive a motion to dismiss. *See DeLorean*, 991 F.2d at 1240. For example, Waeschle's Complaint simply alleges that "each next-of-kin will have a cause of action for . . . intentional infliction of emotional distress."

Even if Waeschle's Complaint alleged "direct or inferential allegations respecting all the material elements to sustain a recovery [for intentional infliction of emotional distress]," *See id.*, Waeschle's claim would still fail as a matter of law.

To succeed on her claim for intentional infliction of emotional distress, Waeschle must prove: (1) extreme and outrageous conduct; (2) intent or recklessness; (3) causation; and (4) severe emotional distress. *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 602 (1985). Liability has only been found:

> where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse resentment against the actor, and lead him to exclaim, "Outrageous!"

*Id.* at 602-03 (quoting Restatement (Second) of Torts §46, comment d, p. 72-73).

"It is generally the duty of the trial court to determine whether a defendant's alleged conduct may reasonably be regarded as so 'outrageous.' Where reasonable minds may differ, the question is for the jury." *Garretson v. City of Madison Heights*, 407 F.3d 789, 799 (6th Cir. 2005) (internal citation omitted).

16

It is not "utterly intolerable in a civilized community," *See Roberts*, 422 Mich. at 603, to retain a deceased person's brain for further examination after the completion of a lawful autopsy without notifying the next-of-kin. Indeed, the statute authorizes the removal and retention of body parts "as long as may be necessary . . . for the detection of . . . crime." MCLA §52.205(5).

### C. Additional State Law Claim

Waeschle contended at oral argument that under established precedent, she has a state law claim for the retention and destruction of her mother's body part without notice. This may be true, but neither negligent nor intentional infliction of emotional distress is the correct cause of action.

## VII. CONCLUSION

Defendants' motion for summary judgment is **GRANTED IN PART AND DENIED IN PART**. The Court dismisses Waeschle's state law claims of negligent infliction of emotional distress and intentional infliction of emotional distress. Waeschle's case, on behalf of herself and others similarly situated, will proceed on the 42 U.S.C. §1983 due process claim.

**IT IS ORDERED**.

                                                s/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: September 19, 2008

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 19, 2008.

s/Linda Vertriest
Deputy Clerk